### Albert V. Thomas v. First National Bank.

1.   BILL OF LADING—*Presumption of Delivery—Rebuttal.*—The fact that upon a consignor's delivery of property to a carrier and taking a bill of lading therefor, he retains the bill of lading and draws on the consignee for the purchase price of the shipment, sells the draft and pledges the bill of lading, which represents the property shipped, to secure it, instead of sending the bill direct to the consignee, should be considered as rebutting the presumption that it was an absolute delivery of the property to the consignee with intent to waive payment on delivery regardless of the form of the bill of lading.

**Assumpsit,** goods sold and delivered.   Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding.   Heard in this court at the December term, 1895.   Affirmed.   Opinion filed June 1, 1896.

H. C. FULLER, attorney for appellant.

Appellant claims that when the merchandise was placed

Thomas v. First National Bank.

on board the cars it belonged to him.   C., C., C. & St. L. v. Moline, 41 N. E. Rep. 480; Merchants Dispatch v. Smith, 76 Ill. 543.

Usner could confer no greater title than he had; having none he could confer none.   Moore v. Robinson, 62 Ala. 437; L. S. & M. S. v. Nat. Live Stock Bk., 59 Ill. App. 451.

HAMMOND & WYETH, attorneys for appellee.

A bill of lading represents the goods, and is effective to transfer ownership or special property or rights in the goods.   2 Am. and Eng. Ency. Law, 240; Davis v. Russell, 52 Cal. 611.

To pass the bill of lading, and thereby the property, to another as collateral security, indorsement is not necessary; it is the possession and delivery of the bill, with an intention to pass title, that is effective; and the insertion of a consignee's name is immaterial.   2 Am. and Eng. Ency. Law, 243, 244.

The insertion of a consignee's name gives him no right to the goods as against the superior equity of a *bona fide* advance to consignor upon the security of the bill, even though the consignor is indebted to the consignee in a greater sum than the amount of the goods.   2 Am. and Eng. Ency. Law, 244; First National Bank v. Crocker, 111 Mass. 163.

If the consignor retains possession of the bill of lading received from the common carrier, any act done by him indicating his intention to transfer the property will overcome any technical or so-called *prima facie* vesting of property in a named consignee, and subject the consignee's rights to conditions imposed by such acts of the consignor.   The power of the consignor over the bill of lading in this respect is not changed by the fact that a consignee is named in it, so long as it is in the hands of the consignor or transferred to a party making an advance on the faith of it. Davenport Bank v. Homeyer, 45 Mo. 145; Bank of Rochester v. Jones, 4 N. Y. 497.

An executory agreement between a dealer or buyer of

goods and another to whom he proposes to ship, from time to time, proceeds to be applied on an account or in some particular way, will not control. If such a dealer in a particular case chooses to ship on different terms, the consignee must accept the new terms or refuse altogether. Bank v. Crocker, 111 Mass. 163; Allen v. Williams, 12 Pick. 297; Taylor v. Turner, 87 Ill. 296.

Where a bill of exchange for the price of goods is inclosed to the buyer for acceptance, together with the bill of lading, the buyer can not retain the bill of lading unless he accepts the bill of exchange, and if he refuses acceptance he acquires no right to the bill of lading or the goods of which it is the symbol. Benj. on Sales, Secs. 398, 399.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

The appellee sued appellant in assumpsit on the common counts to recover the proceeds of three car loads of oranges, shipped from Florida in 1894, by George B. Usner, consigned to appellant. There was trial before a jury and verdict for appellee for $558.64, the amount of the value of the oranges consigned to appellee. Bills of lading were made out by the clerk of the Florida Central and Peninsular R. R. Co., for cars L. & N. 15243, 17689 and 15658.

The cars were shipped January 8 or 9, 1894, and would have reached Peoria, the point of destination, on the 12th of the same month. The aggregate amount due on the oranges besides freight was the sum of $558.64, the amount of the judgment. The bill of lading for car 15658 is dated January 6, 1894, and is in form the same as the other two which bear date January 8, 1894. "Rec'd of George B. Usner, in apparent good order (inward condition and value of contents unknown), three hundred packages, said to contain oranges, consigned, marked and described as follows:
      " Thomas & Co."
    " Peoria."    " To Peoria, Ill."
Then follow the contracts of shipment in small type.
     Signed,         " H. E. DAY, Agent."
Usner issued on the said bill of lading the following draft:

" Jacksonville, Fla., Jan'y 8, 1894.

$250.   At sight pay to order of First National Bank of
Florida, two hundred and fifty dollars, a/c car L. & N.
15685, 300 boxes of oranges, B. of L. attached.   Value rec'd;
and charge the same to acc't of

George B. Usner.

To Thomas & Co.,
   Peoria, Ill."

Two other drafts of the same tenor and effect were drawn
by Usner for the other two car loads of oranges, for $250
each, and the respective bills of lading attached to each of
the drafts.

The appellee, the bank, paid Usner the money on the
drafts and credited his account with it.

The appellant received the oranges without the bills of
lading being presented, and sold and disposed of them, and
when the drafts were presented he refused to pay them, and
they never have been paid.   On the 11th January, 1894,
Usner failed in business.

It appears from the evidence of appellant, Thomas
himself, about which there is no dispute, that some time be-
fore any oranges were shipped, he and Usner arranged that
appellant would advance Usner money on condition he
would sell appellant oranges at the very lowest price, and at
times, if he were able to do so, he would assign appellant
oranges on commission; but when he had to sell the oranges,
that is, when there was a great demand, he would give appel-
lant the preference.   Appellee advanced him money, $2,000
altogether, and this money was to be paid back, part on
each car; as appellant received the cars, he was to draw on
appellant for part of the money and appellant was to apply
the balance on his debt until it was paid.

The appellant received thirty or forty cars.   It was
" probably " understood, as appellant testified, that Usner
was to make drafts on each car; some cars he did make
drafts on and some he did not.   What drafts Usner drew
appellant paid up till the last.   " It was the understanding
appellant was to pay the drafts Usner was to draw against

the cars." Appellant did not pay the drafts against the
last " three cars. There were probably five or six against
which Usner drew no drafts."

It appears it was left a discretionary matter with Usner
whether he would deliver the oranges free on board cars at
Florida and bill them through to appellant without pay-
ment on receipt of the oranges at Peoria, or whether Usner
should draw drafts on bills of lading to be paid when the
oranges were received.

It was well known to appellant that Usner was accus-
tomed to get money advanced at banks on these bills of
lading, and that such was his manner of doing business. In
other words appellant, by his agreement, express or implied,
with Usner, and by their custom, permitted him to use those
bills of lading in his discretion, to pledge as security for
money to be advanced on the drafts to at least the value of
the property mentioned in the bill of lading.

It would certainly be a fraud on parties dealing with
Usner on the faith of such security for appellant to refuse to
pay for the oranges received where they were drawn against
as here. Usner was invested, by consent of appellant, with
power to use those bills of lading for the purposes they were
used, and as against parties dealing with Usner on the faith
of such security, such parties would be protected, however
the case might have been if Usner had retained possession of
the bills of lading and have demanded pay himself. In such
case whatever Usner owed appellee may have been recouped
or set off against Usner's claim.

The law in this State is well settled, that under certain
circumstances a *bona fide* purchaser without notice may get
a better title than his vendor, though it is different in other
States. M. C. R. R. Co. v. Phillips et al., 60 Ill. 190, and
cases there cited. A mortgagee may stand in the same favor-
able relation as a purchaser. Ibid.

It is earnestly insisted both by counsel for appellant and
by appellant *per se*, that the legal effect of the bills of lad-
ing, was to make a delivery of the oranges to appellant when
they were placed on board the cars in Florida. While this

may be so, if so intended, yet it is a matter of intention of Usner to be determined from all the facts, and whether the oranges were shipped on sale or commission, and from the language of the bills of lading, and the agreement of the parties.    Under the circumstances of contracting to allow Usner to draw against the oranges on bills of lading even though delivered free on board at point of shipment, the delivery of the oranges to appellee in Florida, will in law be regarded as conditional, subject to be paid for on arrival at Peoria if drawn against by Usner, and his drafts cashed and in the hands of a *bona fide* purchaser, as here.

We have been shown a later case, decided in the Supreme Court of the State of Missouri, division No. 2, March 17, 1896, reported in Central Law Journal, published in St. Louis, May 1, 1896, Vol. 42, No. 18, page 367.

While we have great respect for the high standing and learning of that court, we would still be of the opinion that the rule is held in favor of the consignee more strictly than it would be in this State, were the facts the same.   We judge from the published court opinions in Illinois.   See M. C. R. R. Co. v. Phillips et al., *supra;* 60 Ill. 190; L. S. & M. S. R. Co. v. Nat. Live Stock Bank, 59 Ill. App. 451; Merchant's Dispatch Co. v. Smith, 76 Ill. 542; Peters v. Elliott, 78 Ill. 321.

In the case in Missouri cited, there was no arrangement between the shipper and consignee for the former to draw on the security of the bills of lading.   Further, in the Missouri case, the court lays it down as the law, as to whether the title to the goods shipped to a consignee vests in him on delivery of them to the carrier, " is a matter of intention on the part of the vendors of the goods, with respect to which the bills of lading are *prima facie* only, and extraneous evidence is admissible for the purpose of showing the real intent of the parties." etc.

" If payment for the goods be waived by the consignor as a condition precedent before delivery of them, the shipper and consignor retains no title.

" If the goods are delivered in pursuance of the contract

of purchase, to the carrier for the consignee, though the bills of lading be retained by the consignor, this could not affect the title to the property which had passed from them."

In the case under consideration, the contract went further than a mere agreement to deliver the oranges on board the cars in Florida to appellant.

It was agreed and understood that Usner might draw against the price of the oranges, using the bill of lading as security for the payment of his negotiable drafts drawn against the oranges, and this was the course pursued in the case of the various shipments or the thirty or forty car loads of oranges, except as to five or six car loads shipped without being drawn against. From the fact that Usner pursued that course under the contract, express or implied, it is in our minds made clear that he did not intend that the title should be parted with to the oranges unless paid for when they reached their destination at Peoria.

This case is clearly distinguishable from the Missouri case above cited, in that the drafts were permitted by appellant to be secured by the bills of lading in the hands of Usner, instead of being sent to appellant.

It is clearly held in the Missouri case that even though a consignor agrees to deliver goods to a consignee at the point of shipment without any express stipulation as to payment therefor, the former need not part with the title to it absolutely without payment on delivery, and upon shipping may retain his lien for the purchase price; that the bill of lading, showing delivery to the carrier for the consignee, is only *prima facie* evidence of the consignor's intention; that it may be rebutted by extraneous evidence.

It would seem to us consonant with reason that if, upon the consignor's delivery of the property to the carrier and taking the bill of lading, he retains the same and draws on the consignee for the purchase price, sells the draft and pledges the bill which represents the property, to secure it, instead of sending the bill direct to the consignee, that this circumstance should rebut the presumption that it was an absolute delivery of the goods to appellee with intention to

waive payment on delivery, regardless of the form of the bill of lading.

The delivery of the goods to the carrier, taking the bills of lading, retaining the same, drawing the drafts, selling them and pledging the bills for their payment, ought to be regarded as one act, and a part of the *res gestœ*, and as furnishing a full explanation of the shipper's intention as against the bill of lading, at least in the absence of other circumstances and evidence tending to rebut such intention.

To hold that the bill of lading should outweigh these circumstances would be too artificial and would result, in many cases, in doing injustice to the shipper and those buying his drafts. We do not think the courts of Illinois will sanction the rule contended for by appellant. The spirit of the decisions of the Supreme Court of this State is to the contrary.

This disposes of the case without reference to the instructions as no other verdict than the one returned would have been proper or sustainable. See Henry E. Lewis, Rec., v. The Springville Banking Co., 66 Ill. App. 63, *post*, a case somewhat similar to this.

Finding no error in the record, the judgment of the court below is affirmed.