## HENRY B. PETERS *et al.*

### *v.*

## ALEXANDER ELLIOTT *et al.*

1. CONSIGNEE—*rights of, to goods consigned, as against creditors of consignor.* Where a party consigns goods to another, and draws upon the consignee for funds, accompanying the draft with the delivery of the bill of lading or shipping receipt as collateral security for its payment, the acceptance and payment by the consignee of the draft, accompanied with the bill of lading or shipping receipt, vests in him a special property in the goods sufficient to maintain replevin against an officer who, after such delivery, attaches them upon a writ against the general owner.

2. In such case, although the draft is not paid until after the officer has levied on the goods, still, if the draft and shipping receipt were delivered to the payee of the draft before the levy, such delivery will be regarded as made for the use of the consignee, and when he pays the draft, his right to the goods will relate back to the time of the delivery of the draft and shipping receipt to the payee of the draft, and this without reference to whether the payee of the draft paid any consideration therefor to the owner or not, if the consignee paid it in good faith, without notice of any attachment or levy on the goods.

APPEAL from the Circuit Court of Mercer county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was a suit in replevin, brought by Peters, Fuhlhage & Co., to recover the possession of 200 barrels of flour.

The flour had been levied upon and taken out of the hands of the Chicago, Burlington and Quincy Railroad Company by a constable, as the property of Cannon & Van Liew, under four several writs of attachment issued against them. The defendants in the suit are, the constable, in whose possession under the levy the flour was, and the plaintiffs in the attachment suits. The controversy was as to the property in the flour at the time of the levy of the writs of attachment, whether it was in Cannon & Van Liew, or in the plaintiffs in this suit, Peters, Fuhlhage & Co.

The evidence consisted of a shipping receipt, a draft, and a written stipulation of facts, as follows:

"*Chicago, Burlington and Quincy Railroad Line.*

*No.* 236.                    VIOLA, ILL., *April* 30, 1874.

Received from Cannon & Van Liew, as consignors, the articles marked and weighed, as follows:

| ARTICLES. | MARKS AND NUMBERS. | WEIGHT. |
|---|---|---|
| 200 bbls. Flour, Shipped in cars, (More or less). | No.'s 716 and 810. | |

            To be billed to

                    PETERS, FUHLHAGE & CO.,

(Original.)                         East St. Louis, Ill.

\*           \*           \*

This receipt is not transferable.

                        A. O. WATERMAN,

(1033.)                             Freight Agent."

"$1000.                    ALEDO, ILL., *April* 30*th,* 1874.

*At sight,* pay to the order of McKinney, Gilmore & Co., one thousand dollars, and charge the same to account of

                        CANNON & VAN LIEW.

*To Peters, Fuhlhage & Co.,*

            *St. Louis, Mo.*

INDORSEMENT.

Pay *Valley Nat. Bank,*
          St. Louis, Mo.
                    McKINNEY, GILMORE & Co.
E. E. MOSES, Teller."

Stipulation as follows :

" It is admitted by the defendants that the plaintiffs paid to the Valley National Bank of St. Louis, Mo., $1000, on the 2d day of May, A. D. 1874, on the above draft, and that to said draft was attached the said shipping receipt signed by the agent of the Chicago, Burlington and Quincy Railroad Company, at Viola, Ill.

" It is further admitted, that the said draft was mailed to the said Valley National Bank of Missouri, on the 30th day April, A. D. 1874, by McKinney, Gilmore & Co., and reached said bank with the shipping receipt attached in the ordinary way, and that said plaintiffs paid said draft in good faith, and had not, at the time they paid the same, any knowledge of the existence of any attachment suit, or of any levy on said flour, by virtue of any process of law.

" It is further stipulated, that Cannon & Van Liew had not, at the time of the shipment of said flour to the plaintiffs, nor at the time it was levied on by said attachments, sold or contracted to sell said flour to said plaintiffs, but that said flour was simply consigned to said plaintiffs, as commission merchants, to sell and account for the proceeds to said Cannon & Van Liew.

"·It is further stipulated, that said draft was drawn on the morning of April 30th, 1874, and delivered to McKinney, Gilmore & Co. before 12 o'clock in the forenoon of said day, with said shipping receipt for the flour in controversy, by Cannon & Van Liew, who then said : ' You hold said flour for your security.' That McKinney, Gilmore & Co. held a note against said Cannon & Van Liew for $600, which the said draft and receipt were to secure, and which was afterwards, when the $1000 were collected, surrendered to said

324          PETERS *et al. v.* ELLIOTT *et al.*          [Sept. T.

Opinion of the Court.

Cannon & Van Liew, with the remainder of $400 placed to their credit, and paid out on their order.

"It is further admitted, that the said McKinney, Gilmore & Co. placed said draft and shipping receipt in the postoffice in Aledo, by 3 o'clock in the afternoon of said day, directed to the National Valley Bank of St. Louis, for collection.

"It is further admitted, that the several attachment suits offered in evidence by the defendants were not commenced until 2 o'clock in the afternoon of the said day, and the property was not levied upon until after that time."

It was admitted that the four writs of attachment in favor of the defendants, against Cannon & Van Liew, were issued and levied upon the flour on the 30th day of April, 1874, and that judgments were rendered afterward in the suits, against Cannon & Van Liew, in favor of the several plaintiffs.

Messrs. BASSETT & WHARTON, for the appellants.

Messrs. PEPPER & WILSON, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is admitted by the counsel for the appellees, that, ordinarily, a sale, mortgage or pledge of property in the course of transportation, may be legally made, and the title passed by the delivery of the shipping bill. But it is contended that the rule, being received in its full force, does not, under the circumstances of this case, aid the claim of right to this property which is here asserted on the part of the plaintiffs.

It is first claimed that no right to the flour could pass by the delivery of the shipping receipt, because of the provision in it, that it was not transferable.

It is enough to say, that, whatever the reason of this provision, it must have been, for some purpose, in the interest of the railroad company. As the company intended and undertook to carry and deliver the flour to the consignees, the delivery of the shipping receipt to them, or for their benefit,

was only to the strengthening of their right to have the delivery of the flour made to them, and it is not perceived how plaintiffs', the consignees, assertion of right to the property, through a delivery of the receipt, should interfere with any interest of the railroad company, or any object of this provision in the shipping receipt. We do not conceive that it has any significance in its bearing upon the rights of the parties in this suit.

It is then objected that there was no valid sale or pledge to McKinney, Gilmore & Co., or to the plaintiffs, of the flour prior to the levy of the attachments, because the former parted with nothing for the draft; that they neither surrendered up the note for $600, upon which the drawers were indebted to them, nor paid to the drawers the excess of $400 above the note, until after the draft was collected and the money remitted to them from St. Louis; that they merely forwarded the draft for collection; that it was a voluntary pledge to them. The pledge of the property by delivery of the shipping receipt, if made to secure a pre-existing debt, would be as valid as if made for new advances.

There was an acknowledged indebtedness of $600 to McKinney, Gilmore & Co., which the draft and shipping receipt were to secure. This would form a sufficient consideration for a pledge of the property to them, if it were to be regarded as one to them alone.

The excess of the amount of the draft which they received above their indebtedness, the $400, might have been garnisheed in the hands of McKinney, Gilmore & Co. by these attaching creditors, but the latter could not take the flour from the former. By the delivery of the draft and shipping receipt to McKinney, Gilmore & Co., Cannon & Van Liew were divested of the title to the flour, so far as was necessary to protect the payment of the draft; their interest then was in the surplus only, and their attaching creditors acquired no greater interest than they possessed. *Schweizer* v. *Tracy*, 76 Ill. 345.

But it is insisted that, whatever the rights of McKinney, Gilmore & Co. may have been, as the plaintiffs did not pay the draft until some days after the levy of the attachments, they could have acquired no right to the property until at that time, and that it must have been acquired from McKinney, Gilmore & Co; but that the latter, at that time, could not transfer any right to the property, because it was in the adverse possession of the officer, under the attachments; that their claim to the property was then but a right of action for the property, which, under the law, can not be sold or assigned, and various authorities are cited to that point.

We do not consider that the state of facts in this case brings the claim of the plaintiffs within the range of the objection taken, or of the authorities cited.

The simultaneous acts, of the shipment of the flour, drawing the draft and the delivery of the same, together with the railroad receipt for the flour to the payees of the draft, McKinney, Gilmore & Co., expressed the intention of the drawers, that the drawees should pay the amount of the draft and reimburse themselves for the payment, out of the flour. It was a request to the drawees, these plaintiffs, to pay the draft, and an intended transfer of the flour as a security to protect them in the acceptance and payment of the draft. At the time, Cannon & Van Liew were the absolute owners of the flour, and had the full power of disposition of it. Their intention and purpose should have effect, unless there be some rule of law which forbids. There is none such, but, on the contrary, the law sustains and gives effect to transactions of this character.

It is well settled, that, where a party consigns goods to another, and thereupon draws upon the consignee for funds, accompanying the draft with the delivery of the bill of lading, or shipping receipt, as collateral security for its payment, the acceptance and payment, by the consignee, of the draft accompanied with the bill of lading or shipping receipt, vests in him a special property in the goods, sufficient to maintain

replevin against an officer who, after such delivery, attaches them upon a writ against the general owner.

The bill of-lading, or shipping receipt, in such case, is a symbol of the goods, and the delivery thereof, with the intention to transfer the property in the goods, is a symbolical delivery of the goods. *Michigan Central Railroad Company* v. *Phillips et al.* 60 Ill. 190; *Haille* v. *Smith,* 1 Bos. & Pull. 563; *Holbrook* v. *Wight,* 24 Wend. 169; *Grosvenor* v. *Phillips,* 2 Hill, 147; *The Bank of Rochester* v. *Jones,* 4 Comst. 497; *Gibson* v. *Stevens,* 8 How. 384; *Allen* v. *Williams,* 12 Pick. 297; *National Bank of Cairo* v. *Crocker,* 111 Mass. 163; *First National Bank* v. *Dearborn,* 115 id. 219.

The delivery of the shipping receipt took place before the levy of the attachments, but, as payment was not made of the draft until some days after such levy, it is supposed by appellants' counsel that the plaintiffs' title had its origin at the time of such payment, and so must yield to the prior levy of the attachments. But the interest acquired by the plaintiffs in the flour dates back to the time of the delivery of the draft and shipping receipt to McKinney, Gilmore & Co. The delivery to the latter is to be regarded as one made to them for the use of the plaintiffs, vesting the property in the latter provisionally,—that is, in case of their acceptance and payment of the draft. The plaintiffs, from the time of that delivery, had a *lien* upon the flour for the advance they should make, with possession in themselves, for the constructive possession of McKinney, Gilmore & Co. is to be regarded as theirs. And, as respects the right of the plaintiffs, we do not conceive it makes any difference that McKinney, Gilmore & Co. paid nothing for the draft; that they received it to pay a debt of $600 to themselves, and to pay over the balance of $400 to Cannon & Van Liew; or whether there was any consideration whatever between Cannon & Van Liew and the payees of the draft.

The draft came to the plaintiffs with the shipping receipt attached to it. They paid it in entire good faith, with no

notice of the attachments or their levy. They were entitled to make the payment on the credit of the flour, and to hold the flour which the shipping receipt represented, for their security in making the payment. It would be, in effect, as if, at the time of making the draft, a mortgage of the flour had been given to the drawees to secure them in the payment they should make of the draft. A mortgage may be made to secure future advances, and will be effective to that end, at least when the future advances are made in good faith, without notice of any intervening adverse right.

Our conclusion, then, is, that the plaintiffs had at least the interest of a *lien* upon this flour to secure the advance they made upon the draft, which is to be regarded as acquired at the time of the delivery of the draft and shipping receipt to McKinney, Gilmore & Co.; and that these attaching creditors had no right afterward to levy upon and take the property out of the hands of McKinney, Gilmore & Co., in whose constructive possession it was for the plaintiffs, before their claim upon the property was discharged.

The judgment must be reversed.

*Judgment reversed.*