COLLATERAL LOAN COMPANY *vs.* NATHAN SALLINGER & another.

Suffolk.   December 6, 1906. — April 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Pledge. Lien. Estoppel. Equity Jurisdiction,* For an accounting.

An alleged pledgee who has lent money in good faith upon articles of personal property wrongfully pledged by the agent of the owner, who entrusted the articles to him to sell to particular persons and did not hold him out as having any other authority, has no lien on the property, and the right of possession remains in the owner who is not estopped from asserting his right.

In a suit in equity by a pawnbroker against a dealer on the instalment plan in jewelry, watches and diamonds, for an accounting as to the proceeds of articles belonging to the defendant and wrongfully pledged to the plaintiff by the defendant's salesman to whom they were entrusted for sale to particular persons, it appeared that the fraudulent salesman on receiving the articles from the defendant immediately pledged them to the plaintiff, reporting in each case a sale and delivering to the defendant a fictitious contract of conditional sale purporting to be signed by the pretended purchaser, and that from time to time the salesman paid to the defendant sums of money which were credited in accordance with his directions upon the different accounts representing the fictitious sales which he pretended to have made. This court decided that the plaintiff had no lien, and that the defendant who owned the articles was entitled to their possession. The plaintiff contended that the pretended partial payments made by the salesman had been made out of the money which he borrowed from the plaintiff on his attempted pledges, and that the defendant ought not to be allowed to retain the plaintiff's money and also have the goods, but it was not shown that any part of the money lent by the plaintiff to the salesman

went into the defendant's hands, and it appeared that if the defendant recovered the articles and retained all the money paid to him by the salesman he still would suffer a loss. The plaintiff did not offer to assume the burdens of the fictitious contracts and carry out such contracts in accordance with their terms. *Held,* that there was no equity in the claim of the plaintiff to be repaid by the defendant any part of the money lent by the plaintiff to the defendant's fraudulent salesman.

BILL IN EQUITY, filed in the Superior Court on April 14, 1904, by a corporation doing business as a licensed pawnbroker against Nathan Sallinger, a dealer on the instalment plan in jewelry, watches and diamonds, and Peter F. Cormier, a former salesman and collector of Sallinger, for an accounting as to the proceeds of articles belonging to Sallinger and wrongfully pledged by Cormier to the plaintiff, asserting also a lien on such articles.

In the Superior Court the case, with other cases against the same defendants, was referred to Arthur Dehon Hill, Esquire, as master. He filed a report, portions of which are quoted in the opinion.

The principal facts were as follows: In February, 1902, the defendant Sallinger was engaged in the business of selling clothing, diamonds, jewelry and watches at retail, for cash and on the instalment plan. He employed the defendant Cormier as a salesman to solicit orders. Cormier was entrusted with a grip, in which were various articles of cheap jewelry which he had the authority to sell to such persons as he thought proper upon instalments, taking from them a so called lease or conditional contract of sale executed by the purchaser, in which the purchaser agreed to pay a certain sum of money down and a certain sum per week or per month until a sum agreed upon should have been paid, at which time the article would become the property of the purchaser. Cormier also was instructed that if he could make sales of more valuable articles than those carried by him in his grip, he could report to his employer the name of the proposed customer with such information as to his financial standing as Cormier might gain, and thereupon, if Sallinger was satisfied to make the sale, he would deliver to Cormier an article of the kind desired, for the purpose of having him deliver it to the proposed customer.

From the day of his employment, Cormier purported to sell

principally goods obtained from Sallinger and which were not in Cormier's grip. He would represent to Sallinger that a certain person named by him, and whom he would represent as well connected, desired an article of a certain kind and of a certain value, to be paid for in a certain manner. Relying upon these representations, Sallinger would procure or cause to be given to Cormier an article of the kind desired, to be delivered to the proposed customer. Cormier would take the article, represent to Sallinger that delivery had been made, account to Sallinger for the article by delivering to Sallinger what purported to be a lease or contract of conditional sale executed by the proposed customer, and would pay to Sallinger what purported to be the initial payment of the customer, in accordance with the terms of the lease. All the leases so given to Sallinger by Cormier were either fictitious or forged, and the pretended sales were purely fictitious. Immediately upon receiving the articles, Cormier pledged them with various pawnbrokers throughout the city of Boston, of whom the plaintiff was one, and the money received by him was used by him for his own purposes.

In June, 1903, Sallinger discovered that Cormier had been defrauding him, and Cormier on being accused confessed and delivered to Sallinger pawn tickets, representing some of the articles which he thus had obtained fraudulently from Sallinger. Sallinger then demanded and received the articles from the various pawnbrokers, and thereupon four of the pawnbrokers, including the plaintiff, brought suits in equity, of which this was one.

During the time that Cormier was in the employ of Sallinger, he from time to time made payments of money to Sallinger, pretending that they were payments made to Cormier by the various persons purporting to have signed the fictitious leases. In connection with his duties as salesman, Cormier also was employed to collect from his various customers the instalments which they agreed to pay to Sallinger in accordance with the terms of the leases, and the payments thus made to Sallinger by Cormier were represented by him to have been collected in the usual course of his employment.

Other material facts are stated in the opinion.

The Superior Court made an interlocutory decree overruling the plaintiff's exceptions to the master's report and ordering that it be confirmed, and later made a final decree refusing the relief prayed for against the defendant Sallinger. The plaintiff appealed from both decrees.

*C. W. Rowley*, for the plaintiff.

*A. K. Cohen*, for the defendants.

HAMMOND, J. This was a bill brought by a pawnbroker against Sallinger, the owner of property which without his authority had been pawned to the plaintiff by Cormier, the other defendant. Apparently several other suits which had been brought by other pawnbrokers, against the same defendants, were all referred with this to the same master. We have to deal simply with the suit brought by the Collateral Loan Company, and mention the existence of the other suits merely that certain statements in extracts hereinafter taken from the master's report may be better understood. With this explanation we now proceed to the case before us.

1. The plaintiff contends that it acted in good faith and that it has a lien upon the articles in controversy. But this position is untenable. Sallinger never entrusted to Cormier the general power to sell or pawn any of these articles. He simply authorized Cormier to sell them each to a particular person, and there was nothing in any word or act of Sallinger, or in any previous dealing with the plaintiff, to indicate that Cormier was held out by Sallinger as having any other authority. Notwithstanding the acts of Cormier, therefore, the title to the goods remained in Sallinger and he is not estopped from maintaining his right.

2. It appeared that from time to time Cormier paid to Sallinger money which the latter credited upon some of the accounts ; and it is strenuously insisted by the plaintiff that Sallinger ought not to be allowed to retain the plaintiff's money and also have the goods. As to this matter the master finds that after Sallinger had become aware of the frauds of Cormier the latter with his sister raised the sum of $245 by a mortgage upon their household furniture, and Cormier paid it to Sallinger's bookkeeper, " at the same time directing the bookkeeper to enter the sum so paid in various amounts, against the ac-

counts corresponding to the various fictitious leases made by him. The bookkeeper carried out Cormier's directions and the money paid in was credited by him upon said accounts. Sallinger subsequently knew all and acquiesced in the entries so made by his bookkeeper, but he did so merely because such entries were convenient as a matter of bookkeeping and because he did not care how the entries were made so long as he got the money. I [the master] find that there was never any agreement between said Sallinger and Cormier, or between said Sallinger and any other person, by which he ratified all or any part of the acts of said Cormier in making said pledges or any of them."

The master further says : " Concerning the allegations in the respective bills of complaint that Cormier used the identical money or the proceeds of the identical money received as loans, upon the articles enumerated in the respective bills of particulars, to make the payments to Sallinger called for by the various fictitious leases, or that if he did not use this identical money, yet he was enabled by the money which he received from the various plaintiffs by way of loans to make the payments to Sallinger called for by the various fictitious leases, and that in either view the plaintiffs are entitled as a matter in equity, to be repaid by Sallinger the amount advanced by them on the articles in question or the amount received by Sallinger from the money so advanced by the plaintiffs, before being called upon to give them up, I find the following facts :

" Previous to his employment by Sallinger, Cormier had been a conductor on the Boston Elevated Railway. Shortly after his employment by Sallinger he went to live with his sister, Mrs. Le May in Boston, and continued to live with her until his arrest, sharing with her the expense of maintaining her household. Mrs. Le May was separated from her husband and earned what money she could towards her own support, by dressmaking and by taking boarders. From these sources I find that she realized between seventy-five and one hundred dollars a month. Cormier received wages at the rate of ten dollars a week when he first entered Sallinger's employ. This was later raised to eighteen dollars a week and continued at that figure up to the time of his confession, after which no money was paid him by Sallinger.

Neither Cormier nor Mrs. Le May had any other sources of income during the period of his employment by Sallinger except those above set forth, and it did not appear that either he or his sister owned any property, but during said period Cormier received the sum of twenty-five hundred dollars from a lawsuit and borrowed some money, — it did not appear how much.

" I find that the money used by him to make payments called for by the terms of the various fictitious leases included money or the proceeds of money received as loans on articles covered by the fictitious leases and pawned as aforesaid, and that it also included money or the proceeds of money received by Cormier from Sallinger as wages, and money or the proceeds of money received by Cormier or by Mrs. Le May during the period in question from the various other sources above stated. I find that it is utterly impossible to now determine what proportion of the money paid Sallinger by Cormier on fictitious leases was money or the proceeds of money received in loans on articles pawned from the several plaintiffs."

The legal title to the articles is in Sallinger. The plaintiff has no lien. It does not appear that any part of the money which the plaintiff paid Cormier ever went into Sallinger's hands. Sallinger is not a gainer, but a loser, even if he retains all the money paid to him by Cormier and also recovers the articles. The plaintiff does not offer to assume the burdens of the fictitious leases and carry out such contracts in accordance with their terms. Under these circumstances there is no equity in its claim to be repaid any part of the money it paid to Cormier.

*Decree affirmed.*