ROLAND M. BAKER COMPANY *vs.* WALDRON P. BROWN & others.

Suffolk.     January 7, 1913. — February 28, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Bill of Lading. Uniform Bills of Lading Act. Sale,* By bill of lading. *Conflict of Laws. Constitutional Law. Conversion.*

Under St. 1910, c. 214, §§ 5, 29, 32, 38, 39, if the consignee of the goods represented by a bill of lading indorses the bill of lading to a certain person without qualification, but with the understanding and agreement that it shall be used only for a particular purpose, and such indorsee in violation of his duty indorses the bill of lading to a purchaser for value without notice of the trust, such innocent indorsee becomes the absolute owner of the goods and can give a good title to them to one who has had notice of the violated trust.

A provision in a bill of lading that "any claims or question between the owners of the goods and ship-owners shall be determined by the English law," although binding as between the owner of the goods and the carrier, has no application to an action between parties whose rights depend on the effect of an indorsement of the bill of lading made in this Commonwealth by the consignee of the goods, which must be determined under the law and statutes of this Commonwealth.

St. 1910, c. 214, known as the uniform bills of lading act, is not to be construed as designed to control the nature and effect of bills of lading issued in foreign countries or in other States, and in regard to the validity, construction and effect of bills of lading themselves is limited to documents issued in this Commonwealth, although it determines the effect of a domestic indorsement of a foreign bill of lading as between parties in this Commonwealth; and so construed the statute is constitutional.

Where a consignee of goods indorses one of the three originals of a bill of lading executed in triplicate, representing the goods, to a person whom he intends to make his agent for a certain purpose but who in violation of his duty indorses the bill of lading to a purchaser for value, who has no notice of the trust and under St. 1910, c. 214, becomes the absolute owner of the goods, if the consignee by means of the second original of the bill of lading demands and receives the goods from the carrier under a claim of right, this is a conversion of the goods as against the *bona fide* purchaser of them under the first original of the bill of lading, even if the consignee had a right as against the carrier to receive the goods.

TORT for the alleged conversion of one hundred and twenty bales of dry cowhides. Writ dated October 10, 1910.

In the Superior Court the case was tried before *Hitchcock*, J., without a jury. The material facts are stated in the opinion.

The defendants asked the judge to make the following rulings:

"6. In so far as the provisions of St. 1910, c. 214, are applicable to foreign commerce, or to goods which are being imported from foreign countries or to bills of lading covering such goods before the importation has been concluded, it is contrary to the provisions of the Constitution of the United States."

"8. In so far as the provisions of St. 1910, c. 214, purport to transfer or change the title to goods by reason or as a result of the indorsement, delivery or transfer of a bill of lading without the intent or purpose of the owner so to transfer or change the title, the statute is unconstitutional.

"9. St. 1910, c. 214, is contrary to the provisions of the Constitution of the United States.

"10. St. 1910, c. 214, is contrary to the provisions of the Constitution of Massachusetts."

The judge refused to make any of these rulings. He made the following ruling, which was requested by the plaintiff:

"The uniform bills of lading act is within the power of the Legislature to regulate and limit the making of contracts and the use and disposition of property, especially with reference to the transfer, sale and negotiation of bills of lading within this Commonwealth, and is constitutional."

The plaintiff asked the judge to make, among others, the following rulings:

"1. Upon all the evidence the plaintiff is entitled to recover.

"2. St. 1910, c. 214, known as the uniform bills of lading act, governs and applies to the bill of lading in this case which was sold by the Columbia Leather Company to the plaintiff."

"5. The liability of the indorser being governed by the law of the place of indorsement, the uniform bills of lading act governs the liability of the defendants in this case.

"6. The defendants having indorsed the bill of lading to the Massachusetts Hide Company without accompanying the indorsement with words of limitation or with any reference to any trust agreement or contract between them, passed the title, and the indorsement is governed by the uniform bills of lading act."

"8. The bill of lading in question contained the words 'order

of ' before the name of the consignee, was indorsed by the consignee to a specified person and was indorsed by said specified person in blank and is therefore negotiable."

The judge refused to make any of these rulings as well as other rulings requested by the plaintiff.

At the request of the defendants, the judge ruled that the plaintiff was not entitled to recover, and also made other rulings requested by the defendants. He made certain special findings of fact, and made a general finding for the defendants. The plaintiff alleged exceptions.

*T. Parker*, for the plaintiff.

*H. E. Warner*, for the defendants.

SHELDON, J. This case seems to have been dealt with, both at the trial and at the argument in this court, largely as if the plaintiff's rights depended upon the title which it acquired when the bill of lading for the goods in question, with the indorsements thereon, was delivered to it. If that were so, it might be found, as was found at the trial, that the plaintiff took the bill of lading with notice of the defendants' claim to the goods represented thereby and of the trust receipt which the defendants had taken from the Massachusetts Hide Company, and so was not a purchaser in good faith and without notice of the breach of duty of the Hide Company in violating the terms of that trust receipt. But that point is not decisive of the case. The plaintiff had, or there was evidence that it had, purchased the hides from the Columbia Leather Company; and, if so, the plaintiff, whatever notice or knowledge it may have had of the defendants' rights, yet acquired all the rights of its vendor. *Murdock* v. *Chapman,* 9 Gray, 156. *Thompson* v. *Kenyon,* 100 Mass. 108. And see the cases collected in 35 Cyc. 363.

The testimony was that the Columbia Company took these hides from the Massachusetts Hide Company in payment of a debt due to it from the Hide Company. The defendants had held this bill of lading, and the goods mentioned therein were to be delivered to their order, in consequence of their having issued to the Hide Company a letter of credit, upon which the hides had been purchased in Russia and shipped to Boston. The defendants had paid or caused to be paid the drafts drawn under their letter of credit for the price of the hides, and bills of lading for the hides

had been issued in triplicate, all of which were originals and "one of which being accomplished, the others [were] to stand void." The defendants were accordingly the absolute owners of the hides. *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154. *Moors* v. *Wyman,* 146 Mass. 60. *Moors* v. *Bird,* 190 Mass. 400. The defendants then, before the arrival of the hides, but after they had received the bills of lading, wrote upon the back of the first of the triplicate bills the indorsement signed by them, "Deliver to Massachusetts Hide Corporation," and on August 11 delivered it to a clerk of that company. This they did upon the representation of that company that it wished to arrange for the custom house entry in advance of the arrival of the ship, with the understanding and intention of both parties that the Hide Company should take the bill merely as the agent of the defendants, and without any design to pass to the Hide Company the title either to the bill of lading or to the goods which it represented, but with authority to sell the same to one Baker whom the Hide Company falsely represented that it had obtained as a purchaser thereof. At the same time with the bill of lading, the defendants handed to the Hide Company a "trust receipt," to be properly filled in and signed and returned to the defendants. This was done, and the trust receipt was returned to the defendants a few days later signed by the Hide Company and by its treasurer. By this receipt, the signers acknowledged that they had received from the defendants the hides "in trust to deliver the same to R. M. Baker, who have [*sic*] purchased the same and to obtain from the purchaser the proceeds of the sale of the same," and to deliver immediately such proceeds to the defendants. This trust receipt provided also that the defendants might at any time cancel the trust and take possession of the goods or the proceeds thereof.

By this transaction, under the common law as declared by our decisions, the title to the hides remained in the defendants; the Hide Company had no power to dispose of them in any other way than by a sale to Baker; and no one else could by a purchase from the Hide Company or by any dealings with it acquire a title to the hides which would be good against the defendants. The bill of lading merely represented the goods themselves; the Hide Company had no greater right, and could pass to any purchaser other than Baker no greater right, than if its possession

with this limited authority had been of the goods themselves instead of the bill of lading which was their representative. *Stollenwerck* v. *Thacher*, 115 Mass. 224, 227. *Moors* v. *Wyman*, 146 Mass. 60. *Cox* v. *Central Vermont Railroad*, 170 Mass. 129, 136. *Commercial National Bank* v. *Bemis*, 177 Mass. 95, 98. *Moors* v. *Bird*, 190 Mass. 400, 408. *Collateral Loan Co.* v. *Sallinger*, 195 Mass. 135. See to the same effect *Brown* v. *Billington*, 163 Penn. 76; *Western National Bank* v. *York Silk Manuf. Co.* 225 Penn. St. 422. *Moors* v. *Kidder*, 106 N. Y. 32. *Soltau* v. *Gerdau*, 119 N. Y. 380.

. But before any of these transactions took place our uniform bills of lading act, St. 1910, c. 214, had been passed. Section 5 of that act provides that "a bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill, is a negotiable or order bill." By § 29, "A negotiable bill may be negotiated by the indorsement of the person to whose order the goods are deliverable by the tenor of the bill. Such indorsement may be in blank or to a specified person. If indorsed to a specified person, it may be negotiated again by the indorsement of such person in blank or to another specified person." By § 32, any one to whom a negotiable bill has duly been negotiated acquires thereby "such title to the goods as the person negotiating the bill to him had, or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the consignee and consignor had, or had power to convey to a purchaser in good faith for value." By § 38, "the validity of the negotiation of a bill is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the bill was deprived of the possession of the same by fraud, accident, mistake, duress or conversion, if the person to whom the bill was negotiated, or a person to whom the bill was subsequently negotiated, gave value therefor, in good faith, without notice of the breach of duty, or fraud, accident, mistake, duress or conversion." And § 39 further adds that "where a person having sold, mortgaged or pledged goods which are in a carrier's possession and for which a negotiable bill has been issued, or having sold, mortgaged or pledged the negotiable bill representing such goods, continues in possession of the negotiable bill, the subsequent negotiation thereof by that person

under any sale, pledge or other disposition thereof to any person receiving the same in good faith, for value and without notice of the previous sale, shall have the same effect as if the first purchaser of the goods or bill had expressly authorized the subsequent negotiation."

The effect of the statute has been to change fundamentally the rights of parties to transactions within its purview. In the present case, if the statute applies to it, when the defendants delivered their bill of lading to the Hide Company, with their unconditional and unlimited indorsement thereon, they entrusted their property to the honesty of that company and relinquished their right to set up their title against any one who might in good faith, for value, and without notice of the duty which rested upon the Hide Company, purchase from that company the goods described in the bill and take from that company a delivery of the bill itself duly indorsed by it. The previous decisions of this court, by which the defendants were protected against the consequences of their agent's breach of duty, have been abrogated and nullified by the statute. As is said in Williston on Sales, § 437, the statute "renders unsafe what has doubtless been a common practice of bankers who advance money on documents of title — the entrusting of the documents for a special purpose to the pledgor of them or the proposed buyer of the goods." The Columbia Company seems from the findings of the judge to have made, or at any rate it could be found to have made and there is no finding that it did not make, its purchase from the Hide Company in good faith and without notice of any limitation upon the authority or any breach of duty of the Hide Company. It gave value for its purchase. The statute provides (§ 53) that "an antecedent or pre-existing obligation, whether for money or not, constitutes value where a bill is taken either in satisfaction thereof or as security therefor." If the statute applies to this case, the plaintiff's exceptions must be sustained. The case then must be governed by the decisions which either were made upon statutes resembling more or less closely the one which we are considering, or independently of statutes have adopted the rule thereof instead of the one laid down in our former decisions. See for example *Tiedeman* v. *Knox,* 53 Md. 612; *Hutchings, Sealy & Co.* v. *Missouri, Kansas & Texas Railway,* 84 Kans. 479; *Pollard* v. *Reardon,* 65 Fed. Rep. 848; *Munroe v.*

*Philadelphia Warehouse Co.* 75 Fed. Rep. 545; *Commercial Bank* v. *Armsby Co.* 120 Ga. 74; *Pease* v. *Gloahec,* L. R. 1 P. C. 219.

This bill of lading was a foreign contract. The goods were foreign goods, shipped from Russia. The bill of lading contained the stipulation that "any claims or question between the owners of the goods and ship-owners shall be determined by the English law." It has been found as a fact, on evidence which warranted the finding, that a transfer of a bill of lading to an indorsee for a special purpose by the English law passes no title to the goods except for such special purpose. Nor can we consider upon this question any English decision which was not put in evidence at the trial. *Miller* v. *Aldrich,* 202 Mass. 109. Even without the clause which we have quoted from the bill of lading, the statutory law of this Commonwealth could not be made to govern the rights and obligations of the carrier of these goods under the foreign contract. With that stipulation, those rights and obligations must be determined by the law of England, and our statutes have no bearing thereon. But no question for or against the carrier is raised. The rights of the parties before us depend upon their contracts with each other, and all those contracts were made here and are governed by our laws. Everything done by either party has been done here, and it is only their rights against each other by reason of what has been done here that are now in question. The law of the place where the defendants made their indorsement is the law which must determine the result of their action. *Alcock* v. *Smith,* [1892] 1 Ch. 238, 255, 263, 266, 269. The same rule is applied to the transfer of foreign notes, checks or bills of exchange by indorsement, and the contract of indorsement is governed by the law of the place where that is made. *Glidden* v. *Chamberlin,* 167 Mass. 486, 494. *Embiricos* v. *Anglo-Austrian Bank,* [1905] 1 K. B. 677. McLean, J., in *Nathan* v. *Louisiana,* 8 How. 73, 82. So the rights, as between themselves, of the parties to a domestic transfer of shares in a foreign corporation are governed by the domestic law, though their rights against the corporation may depend upon the foreign law. *Williams* v. *Colonial Bank,* 38 Ch. D. 388; affirmed on appeal, *sub nom. Colonial Bank* v. *Cady,* 15 App. Cas. 267.

But it is said that the statute is unconstitutional, because it is a regulation of foreign and interstate commerce, and so encroaches

upon the power of Congress under the Constitution of the United States, art. 1, § 8. If the statute were construed, as under its broad wording possibly it might be, as designed to control the nature and effect of bills of lading issued in foreign countries and in other States, there would be great force in this contention. *Wabash, St. Louis & Pacific Railway* v. *Illinois,* 118 U. S. 557. *Commonwealth* v. *Housatonic Railroad,* 143 Mass. 264. *Commonwealth* v. *Caldwell,* 190 Mass. 355. *Opinion of the Justices,* 211 Mass. 605. But the statute is not to be so construed as to make it unconstitutional if that can be avoided; and it is naturally, as to the validity, construction and effect of bills of lading themselves, to be limited to documents issued within this Commonwealth. And contracts made here as to goods brought hither either from abroad or from other States are not to be withdrawn from the control of this Commonwealth. The rights of these parties under their domestic indorsements of the foreign bill of lading which are here in question are in our opinion within the control of the Legislature, so far at least as concerns their relations with each other, although the rule may be different as to their rights and obligations toward the foreign shipper or the carrier. Construing the statute as affecting domestic contracts only, we see no ground for declaring it unconstitutional. See *Nathan* v. *Louisiana,* 8 How. 73; *Paul* v. *Virginia,* 8 Wall. 168; *Sherlock* v. *Alling,* 93 U. S. 99, 102, 105; *Plumley* v. *Massachusetts,* 155 U. S. 461; *Commonwealth* v. *Huntley,* 156 Mass. 236; *Commonwealth* v. *Danziger,* 176 Mass. 290; *Vermilye* v. *Western Union Telegraph Co.* 207 Mass. 401.

It follows from what has been said that the Columbia Company by its purchase from the Hide Company and the indorsement and delivery of the bill of lading acquired as against the defendants a good title to the hides, and that title passed to the plaintiff by its purchase from the Columbia Company. The act of the defendants in obtaining the hides from the carrier by means of the second bill of lading was, as to the plaintiff, wrongful and, having been done under a claim of right, constituted a conversion, for which they became liable to the plaintiff; and no demand was necessary before bringing the action. *Hunt* v. *Boston,* 183 Mass. 303. *Geneva Wagon Co.* v. *Smith,* 188 Mass. 202.

Nor can the defendants be heard to assert that the first bill of lading had become a spent document, upon the ground that before

the plaintiff received that bill the carrier had delivered the hides to the defendants upon the second original bill of lading, which had remained in their possession. It may be that the carrier was justified in making this delivery, and that the plaintiff could not have maintained any action against the carrier therefor. *Glyn Mills, Currie & Co.* v. *East & West India Docks Co.* 7 App. Cas. 591. But it was none the less, as to all parties claiming under the first bill, which the defendants had indorsed and allowed to be put into circulation, a delivery wrongfully obtained by the defendants. See *William T. Hardie & Co.* v. *Vicksburg, Shreveport & Pacific Railway,* 118 La. 254; *Peters* v. *Elliott,* 78 Ill. 321.

We need not consider the exceptions in detail. The essential features of the case are covered by what has been said. We may add, however, that the specific evidence, the admission of which was excepted to, was rightly admitted at the time that it was offered. It tended toward the maintenance of the defense set up. It would have become material if neither the plaintiff nor the Columbia Company was a *bona fide* purchaser of the hides.

*Exceptions sustained.*