HORMIDAS A. VOGHEL *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol. October 27, 1913. — November 25, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Carrier,* Of goods. *Bill of Lading. Evidence,* Presumptions and burden of proof. *Uniform Bills of Lading Act. Words,* "Lost."

Where the last of successive carriers receiving goods has not bound itself to deal with the goods in a manner different from that directed by the preceding carrier, such last carrier is required to follow the directions contained in way bills that are the only shipping documents transmitted to it.

The provision of the uniform bills of lading act contained in St. 1910, c. 214, § 11, cl. b, that a carrier of goods, in the absence of some lawful excuse, must deliver the goods upon the surrender, properly indorsed, of the bill of lading, if it is negotiable, applies, as between the consignee and the last carrier in this Commonwealth, to a bill of lading issued in a foreign country.

The provision of the uniform bills of lading act, contained in the last sentence of St. 1910, c. 214, § 11, that "in case the carrier refuses or fails to deliver the goods in compliance with a demand of the consignee or holder so accompanied [as above provided in that section], the burden shall be upon the carrier to establish the existence of a lawful excuse for such refusal or failure," does not apply to a refusal to deliver the goods where the consignee did not offer to surrender a properly indorsed negotiable bill of lading which was issued for the goods, as he was required to do by cl. b of that section.

*It seems,* that under the uniform bills of lading act, if a consignee of goods cannot obtain possession of a negotiable bill of lading issued for them and therefore cannot comply with the requirement of St. 1910, c. 214, § 11, cl. b, by offering

to surrender to the carrier the bill of lading properly indorsed, he may resort to the remedy given by § 17 of the same chapter where a negotiable bill of lading has been lost.

REPLEVIN for four carloads of hay contained in cars taken on the replevin writ from the possession of the defendant at its freight yard in New Bedford, the hay having been shipped to New Bedford from Saint Cyrille in the Province of Quebec in the Dominion of Canada. Writ in the Third District Court of Bristol dated August 24, 1911.

On appeal to the Superior Court the case was tried before *Dubuque,* J. The evidence is described in the opinion. At the close of the evidence the defendant asked the judge to make the following five rulings, besides others that have become immaterial:

"1. On all the law and the evidence, the plaintiff is not entitled to a verdict.

"2. At the time the replevin writ was served on the defendant, the plaintiff was not entitled to the immediate possession of the goods.

"3. The plaintiff was not entitled to the possession of the goods without surrendering to the defendant the bills of lading covering the shipments.

"4. The plaintiff had no right to replevy the goods.

"5. The plaintiff had no right to secure possession of the goods by an action of replevin."

The judge refused to make any of these rulings and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $154. The defendant alleged exceptions.

*A. W. Blackman,* for the defendant.

*A. Auger,* for the plaintiff.

SHELDON, J. When these cars loaded with hay were received by the defendant at New Bedford, and before and after that time, the only shipping documents that came into the defendant's possession were the way bills which had been transmitted with the hay from the preceding carriers to the defendant. The defendant was bound to comply with the directions contained in these way bills unless by some agreement or by some act or conduct of its own it had waived the benefit of those provisions or bound itself to do something at variance with those directions.

*Saxon Mills* v. *New York, New Haven, & Hartford Railroad,* 214 Mass. 383, 397, in which some of the decisions which have settled this rule are collected. One of those directions was that the surrender of the "order bill of lading," properly indorsed, must be required. There was no dispute that such an original bill, an "order" or negotiable bill of lading, had been issued by the Intercolonial Railway, the initial carrier. Indeed, under these circumstances, our own statute requires the surrender of such a bill of lading, properly indorsed. Uniform bills of lading act, St. 1910, c. 214, § 11, cl. b. The statute, although this bill of lading was issued in a foreign country, is applicable to these parties as between themselves. *Roland M. Baker Co.* v. *Brown,* 214 Mass. 196, 203. It follows necessarily, as the plaintiff admits that he has not complied with this requirement, that the action cannot be maintained, unless under the circumstances of this case such compliance could be dispensed with.

The plaintiff contends that under the last sentence of § 11 of the uniform bills of lading act above referred to, the burden was on the defendant to show an excuse for its refusal to deliver the hay to him upon his demand. But plainly this is not so. By that sentence the burden of proof is cast upon the carrier only upon its neglect or refusal to comply with a demand for delivery accompanied among other requisites, by "an offer in good faith to surrender, properly indorsed, the bill which was issued for the goods, if the bill is negotiable." The plaintiff admitted that he made and could make no such offer; and it was undisputed that a negotiable bill of lading for the hay was issued by the first carrier, and there is no evidence that any other bill for it ever was issued by any carrier. The burden was on the plaintiff to show that he had a right to the immediate possession of the hay, and that burden included, under the facts of this case, the obligation to show that the existing circumstances were such as to make it the duty of the defendant to deliver the hay to him without the surrender of the bill of lading.

No such circumstances were shown. The utmost effect that could be given to the testimony of the plaintiff narrating his conversations with the defendant's agents is that they advised him as to the manner in which he should proceed to get from his consignor and vendor, or from some prior carrier into whose hands

the hay had come, such documents or such consent to his desires as would cause the hay to be sent on and made deliverable to him. The defendant did not know, and except from the statements of the plaintiff had no means of knowing, what title he had acquired or what right he had to require the owner or some prior carrier to send it on to him. But it was not bound to give credit to or to act upon these statements of the plaintiff, and indeed could do so only at its own risk, as was said by this court in *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154, 156, 157. Nothing that was claimed to have been said or done by any agent of the defendant could be construed into a promise or even a representation that it would accept and act upon the plaintiff's statements or that it would deliver the hay to him if and when it should arrive at New Bedford, on any other terms or in any other manner than such as should be directed by the shipping documents that it should receive with the hay itself.

Nor is it material that the jury under the instructions given to them must be taken to have found that the hay was transported from St. Albans in Vermont under a different agreement from that which was contained in the original negotiable bill of lading. If this was so, as perhaps there was some meagre evidence to indicate, yet there was certainly no evidence to show that any such new agreement or arrangement had been made by or with the defendant or with its privity, or that the defendant had received, from any one authorized to give them, any instructions to modify or control the directions contained in the way bills which it did receive. If the consignor or any previous carrier had modified by a binding agreement the original contract of shipment so as to authorize and require the delivery of the hay to the plaintiff without a surrender of the bill of lading, it became the duty of the consignor or of such prior carrier to modify the shipping directions accordingly, or in some other proper manner to give suitable instructions to the succeeding carriers; and it well may be that for a failure to comply with this duty there would be a remedy against the party who had thus violated his contract, but the defendant, not being in any way at fault, would not be liable therefor. Although the defendant might have been told by the plaintiff of his claims, yet when the hay came to its hands under these way bills, it could conclude only that the consignor

had chosen to prevent delivery from being made to the plaintiff, until he, the consignor and vendor, should enable the plaintiff to surrender the bill of lading, and whether the vendor did this to secure himself for the price of the hay or for some other reason would not concern the defendant.

The plaintiff, however, on his own showing was not without remedy against the defendant. He might have proceeded under § 17 of the uniform bills of lading act, if he was unable to get possession of the bill; for there can be no doubt that as between these parties the bill in that case would be "lost" within the meaning of the statute. If he could obtain the bill, he needed of course no further protection.

It follows from what we have said that the defendant's first five requests for instructions should have been given. The other questions raised need not be considered.

*Exceptions sustained.*