Pettingell, P. J.
The plaintiff by election is proceeding in tort for the conversion of her automobile. The answer is a general denial and payment, with the further answer “the defendant says that if the plaintiff shall prove that the defendant committed the acts, then the defendant says that the same was done under and by virtue of the authority vested in the Cambridge Police Department under its police powers.”
There was a finding for the plaintiff.
The trial judge found the following facts:
“The plaintiff, on October 13, 1937, in the morning, parked her automobile facing a triangular section of Harvard Square, near Church Street in the City of Cambridge. She set the emergency brake and locked the ignition, steering wheel, and doors. She then proceeded to her place of employment in Boston, returning for her automobile at 5:30 the same afternoon.
*158 “In some manner unexplained, the automobile was moved to a point where it extended over the tracks of the Boston Elevated Railway. In consequence of this, elevated and other traffic was held up. The Police Department, pursuant to a practice which has obtained for some time, instructed a corporation known as Automobile Protective Patrol of 9 Decatur Street, Cambridge, to remove the plaintiff’s automobile. The defendant is the manager of the business of said corporation and all of the acts complained of took place under his direction, and, therefore, if tortious, he is liable to the person injured regardless of the fact that he was acting in behalf of a principal.
“In consequence of the instructions of the Police Department, a mechanic and a tow car were dispatched by the defendant to the place of obstruction, and by releasing the brake pins of the plaintiff’s car, it was then towed to the garage of the Automobile Protective Patrol.
‘ ‘ The plaintiff, upon being unable to find her car, reported the matter to the police. She was instructed by them that upon signing a paper entitled “Release”, which, in fact, was a receipt, that she might receive the vehicle at the garage of the Automobile Protective Patrol. The plaintiff signed this receipt, which acknowledged that she ‘ received the car described above in good condition from the Police Department and the Automobile Protective Patrol’. At the time of the execution of this receipt, the plaintiff did not know that the defendant was going to demand a payment before releasing the car. The plaintiff was given by the Police Department an identification ticket and then went to the garage of the corporation to regain possession of her car.
“The defendant, as manager, demanded that he receive the sum of five dollars before releasing the car. Much conversation took place between the plaintiff and the defendant on the subject of this payment, the plaintiff not at the moment having in her possession the demanded sum and being greatly disturbed and agitated over the prospects of not being given the immediate *159 possession of her automobile. The plaintiff did, however, insist that the car be turned over to her without payment. After some unpleasant discourse between the plaintiff and the defendant, she finally was permitted to take her car, upon her agreement that she would return and pay the sum of five dollars. The plaintiff later paid this sum to the defendant. I find that the automobile was withheld by the defendant for about one and one-half hours after demand by her.
“This action is brought by the plaintiff to recover for an alleged conversion, as set forth in count one of her declaration, she having waived all other counts at the trial.
“The Police Department had an obvious right to remove this admitted obstruction from the course of traffic. It seems reasonable that the exigencies caused by this obstruction in a congested area, where it is highly necessary from the standpoint of the public interest that traffic be moved as rapidly as may be, demanded that immediate action be taken. However, I am unable to find that there was any legal justification for the defendant’s demand of payment of the sum of five dollars. No ordinance was introduced to support such a demand. Therefore, his refusal to deliver to the plaintiff the automobile upon demand constituted a conversion. No great damage, however, resulted from this conversion, except that the plaintiff lost the use of her automobile during the period while the defendant unreasonably refused to deliver it to her. _ The car was restored to the plaintiff in as good condition as delivered to the defendant by the Police Department, and in as good condition as when parked by the plaintiff in the morning. I find that the fair and reasonable damage to the plaintiff is the sum of twenty-five dollars.
See Lucas vs. Trumbull, 15 Gray 306.
“ Jackson vs. Innes, 231 Mass. 558.
“ Varney vs. Curtis, 213 Mass. 309.
“I make the following disposition of the defendant’s-request for rulings:
*160 1. Denied. 2. Denied. 3. Allowed. 4. Allowed, insofar as applicable. I find, however, that the tortious act claimed by the plaintiff was the refusal to deliver the automobile upon request and not the removal by the defendant from the square. 5. Allowed, but see finding in respect of Bequest No. 4.”
The request filed by the defendant and disposed of as above, are as follows:
“1. On all the law and the evidence a finding for the plaintiff is not warranted. 2. A finding for the defendant is warranted on all the law and the evidence. 3. Under the general police powers delegated to the Police Department of the City of Cambridge, the police department or any member of its force had a right to remove or order to be removed the automobile of the plaintiff. 4. If the Court finds that the defendant acted at the request of the Cambridge Police Department or any member thereof in the removal of the plaintiff’s automobile, the Court should rule that the defendant was acting as a public official in the discharge of the duty imposed upon the police department or as an agency of the police department, and in either event is not liable to the plaintiff. 5. Impediments, obstacles or obstructions in the highways may be removed summarily by the police under the general police powers, and any agent or agency acting with, for, or on behalf of the police department is protected by such powers.”
The only issues of law before us are those raised by the denial of the defendant’s first and second requested rulings. Other matters have been argued but we do not discuss them because they were not raised in the district court, were not ruled upon by the trial judge, and are not contained in the report. Massachusetts Building Finish v. Brenner, 288 Mass. 481, at 484. McKenna v. Andreassi, 291 Mass. 213, at 215. Bresnick v. Heath, 292 Mass. 293, at 296. Coleman v. *161 Wallace, 299 Mass. 475, at 477. Himmelfarb v. Novadel Agene Corporation, 305 Mass. 446 ,at 449.
The two requests denied, treated together, have the same effect as a motion for a directed verdict in a ease tried to a jury. They are not controlled by Buie 27 of the District Court Buies (1940 Ed.) because they are not requests for a finding on the evidence but are requests as to the sufficiency or insufficiency of the evidence to warrant designated findings. They are complete in themselves, as far as Buie 27 is concerned, because they contain their own specifications; they ask specifically for the trial judge to rule that he is or is not warranted in making the findings designated. First National Bank v. Sheridan, 285 Mass. 338, at 339, 340. Bresnick v. Heath, 292 Mass. 293, at 298. Howard v. Malden Savings Bank, 300 Mass. 208, at 211. Memishian v. Phipps, 311 Mass. 521, at 522. The denial of these requests was not error, if a finding for the plaintiff is warranted in any form of declaring, or if the law and the evidence does not warrant a finding for the defendant.
On the evidence reported by the trial judge, there was at conversion of the plaintiff’s automobile by the defendant, an exclusion of the plaintiff from the possession of her automobile as to which she was entitled to immediate possession, Jean v. Cawley, 218 Mass. 271, at 277, 278. Lawyers Mortgage Investment Corp. v. Paramount Laundries, 267 Mass. 357, at 360. The fact that later the plaintiff and the defendant entered into a transaction by the terms of which the defendant returned the property does not change the fact of the .conversion, although it enters into the question of damages which, however, is not before us.
The real question in the case is simple, whether or not there is any legal authority by which a garage keeper, who, *162 at the request of the police department, has removed and stored an automobile, constituting an obstruction to travel on a highway, can maintain a lien upon the automobile for its towing and storage. The right and authority of the police department to remove such an obstruction is not in question. Arundel v. McCulloch, 10 Mass. 70, at 71. Haskell v. New Bedford, 108 Mass. 208, at 211. The right of the defendant, as a private individual, to remove the automobile is not in issue. Hallenbeck v. Rowley, 8 Allen 473, at 476; the issue is his right, without any contractual relation with the plaintiff, to hold the automobile until he has been paid for towing and storing it.
No statute covering this matter has been called to. our attention and we know of none which affects it. The issue must be decided, therefore, at common law.
The question whether a lien exists for a garage proprietor is discussed in American Jurisprudence, Yol. 24 under the title, Garages, Parking Stations, and Liveries, in which it is stated in Section 55, that “no lien for storage exists at common law in favor of a livery-stable keeper or a garage keeper.” It has been held that a mechanic has a lien at common law for the labor and material expended and used in repairing an automobile, but that there is no such lien for towing a car. West Allis Industrial Loan Company v. Stark, 197 Wisconsin 363, 62 A. L. R. 1483; see, also, the annotation following that case is 62 A. L. R. 1485, at 1486. That case, also states “As the livery-stable keeper did not come within the common law, neither does the garage keeper.” A. G. Graben Motor Company v. Brown Garage Company, Iowa 1923, 195 Northwestern Reporter 752; 31 A. L. R. 832, and the annotation following, at 834, citing to the same effect, Crosby v. Hill, 121 Me. 432.
*163 Upon consideration of the cases cited in American Jurisprudence and the annotations in 31 and 62 A. L. R. it is apparent that almost universally throughout the country no lien exists at common law for the storage of an automobile although there are cases where such a lien has resulted from a definite agreement to that effect following the analogy of a warehouseman’s lien. Annotation, 31 A. L. R. 834, at 836.
The law in Massachusetts is the same as in the rest of the country. There are no decided cases on this point in Massachusetts, but in Flesher v. Handler, 303 Mass. 462, Judge Lummus, in speaking of common law liens, said, at page 464,
“The legislature thought it necessary to provide a statutory lien for the storage of motor vehicles. Gr. L. (Ter. Ed.) c. 25, section 25.”
G-. L. (Ter. Ed.) c. 25, section 25 passed in 1913, gives such a lien to public garagemen for “motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof.” That statute does not help the defendant. There is no basis upon which he can claim that the plaintiff’s automobile was in his possession by the consent of the plaintiff.
In Finnigan v. Hadley, 286 Mass. 345, the Supreme Judicial Court held that a warehouseman had a lien for the storage of goods brought to the warehouse for storage by a landlord who had removed them from an apartment leased from the landlord by the plaintiff. .The earlier cases had held that although the landlord had under such circumstances the right of removal, he had no right to retain the goods in his possession and no right to place them in storage at the expense of the owner. In Finnigan v. *164 Hadley, supra, the court held that the plaintiff’s conduct in absenting himself from the apartment and from the Commonwealth, so that he could not be reached, was such conduct as to create an “implied authority,” authorizing the landlord to place the goods in storage at the owner’s expense, a lien resulting.
The only contention that can be made in this case upon the basis of Finnigan v. Hadley, supra, is that the particular exigencies of the circumstances under which the plaintiff’s automobile was removed from traffic and placed in the defendant’s possession created a lien by “implied authority.”
In Finnigan v. Hadley, however, there was first a contractual relation, and conduct inconsistent with it, which resulted in the lien. The court said, at page 348, that “authority was conferred upon the lessor by the bad conduct of the plaintiff. ’ ’ There is in the case at bar no evidence that the.plaintiff’s conduct was the cause of her automobile being in the way of traffic. She had left it in a proper place, properly parked and securely locked. It is true that it had been left parked in a place reserved for one hour parking, with an intention of leaving it there all day in violation of the parking regulations. That improper conduct of the plaintiff, however, can in no way be considered a contributory cause of the subsequent change of position of the car but amounted to a mere condition of the incident.
Nor was there any relation between the plaintiff and the defendant which created any duty upon the plaintiff in this matter which could result in an implied authority to store the plaintiff’s car.
It may be said, however, that such an implied authority resulted from the necessity of removing obstructions from traffic and placing them elsewhere. What the court said at *165 page 348, in Finnigan v. Hadley, supra, about this phase of the matter is particularly applicable.
“Public convenience required that they be put somewhere. Every consideration for the welfare of the public, for the preservation of law and order, and for the benefit of the lessee of the owner would be conserved by placing the goods in some secure storage. * * * Modern conditions render inapplicable a rule which perhaps would have prevailed in earlier days when urban yard room was more spacious than now.”
We are of the opinion, however, that the law is definitely settled otherwise in Massachusetts and that we have no authority, by judicial opinion, to change it. We have seen that the weight of authority is overwhelmingly that a garage man, as in the case of livery stable keeper, has no common law lien.
There is other legal experience in Massachusetts to the effect that the removal of obstructions of the highway at the expense of the obstructor is entirely a matter of legislation.
In Plumer v. Brown, 8 Met. 578, Chief Justice Shaw said, at page 584,
“We are far from intending to intimate that a public officer, removing a nuisance, may not charge the party who created it, with the reasonable cost of its removal. The Eev. St. c. 24, section 63, provide that when any fence or other incumbrance, erected or continued on any town way or highway, shall be adjudged a nuisance, and ordered to be abated, the materials of such incumbrance may be sold to pay the.costs and charges of prosecution; and, if insufficient, the party convicted of erecting or continuing it shall be chargeable for the balance.”
The Eev. Sts. c. 24, section 63, is now represented by G. L. (Ter. Ed.) c. 86, section 24. Both the Eevised Statutes *166 section and the General Laws section are inapplicable to the case before us because each of those sections presupposes judicial proceedings and an adjudication establishing the liability of the creator of the "obstruction. As far as the case before us is concerned, Plumper v. Brown, supra, is important only by way of comparison.'
The same situation exists in the case of the impounding of stray beasts going at large. The first statute dealing with that situation was passed in 1698. G. L. (Ter. Ed.) C. 49, now covers that field. Section 24 gives the field driver a right to take up beasts going at large on the public way; Section "25 provides for the impounding of such animals, and sections 26 and 27, define the charges to be made by the field driver and compound keeper, and prescribe that the beasts shall not be delivered to the owner until the charges thus made are paid. This was so much a statutory matter, that the procedure did not apply to a beast not named in the statute. Berry v. Ripley, 1 Mass. 167, at 169, 170.
The statutory provisions, now represented by G. L. (Ter. Ed.) c. 49, do not in terms penalize the owner of such animals, or depend upon the negligence of the owner in allowing his animal to be at large. Texeira v. Sunderquest, 288 Mass. 93, at 95. They undoubtedly represent a matter of public policy, the protection of the public and owners of * land adjoining the highway against damage from stray cattle and other beasts at large. Although it is not so called in terms, they undoubtedly create a lien upon the animals for the benefit of the officials taking them up and confining them. As in the case of Plumer v. Brown, supra, the remedy provided for the situation is wholly statutory.
We have seen, also, that the legislature “thought it necessary to provide a statutory lien for the storage of motor *167 vehicles, Flesher v. Handler, supra, and that that lien is based upon the'existence of the assent of the owner of the vehicle.
If a thief had stolen the plaintiff’s car and had placed it in the defendant’s garage, no lien for storage could have resulted. A thief can give no title to stolen property, excepting money or negotiable securities. Heckle v. Lurvey, 101 Mass. 344, at 345. The owner can recover his property even if a thief has pledged it. Collateral Loan Company v. Sallinger, 195 Mass. 135, at 138.
It is apparent that the plaintiff’s car moved from the safe position in which the plaintiff had left it to the place where it became an obstruction to traffic because force in some form or other was applied to it. It may be that some one attempted to steal it. Despite the present apparent state of the law in Massachusetts, such an attempt by a thief, if the defendant’s contention is correct, can result in the creation of a lien which is opposed both to the common law, as it has developed in the past, and to such legislation as has been enacted. - The history of the law in this Commonwealth points to the existence of a principle that no lien exists for a stored vehicle, except one created by the assent of the owner. We are of opinion that we are controlled by the existence of such a principle.
We are of opinion, also, the defendant’s retention of the plaintiff’s automobile for an appreciable amount of time was a conversion, that the plaintiff is entitled to a recovery on that ground and that under no circumstances shown by the evidence was the defendant entitled to a finding. There was no error, therefore, in the denial of the defendant’s first and second requested rulings.
We do not consider favorably the plaintiff’s requests for double costs. The case contains an issue of law which is *168 pertinent to present conditions and of importance both to the police and the general public. A decision of that question by the Supreme.Judicial Court may possibly give the defendant the relief he has sought here, or may bring home to the legislature the need of remedial legislation to deal with the problem. As there is a real issue involved we do not feel that the defendant should be penalized for raising it.
No prejudicial error appearing, the report is to be dismissed.